MARIAN H. (POLK) FRIED *et al.*, Plaintiffs-Appellants, v. POLK BROTH-
ERS, INC., *et al.*, Defendants-Appellees.

Second District   No. 2—89—0066

Opinion filed November 9, 1989.

872

Peter N. Weil, Herbert Beigel, and Lewis S. Sandler, all of Beigel & Sandler, of Chicago, Costigan & Wollrab, of Bloomington, and Wollrab & Associates, P.C., of Boulder, Colorado (Stephen D. Sharp, of counsel), for appellants.

John L. Snyder and David B. Goroff, both of Hopkins & Sutter, of Chicago (Michael M. Conway, of counsel), for appellees.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiffs, the widow and three sons of David H. Polk (the heirs), appeal the dismissal of their six-count complaint against the defendants alleging the erroneous valuation in David Polk's estate of the stock owned by him at the time of his death in April 1955. The complaint was dismissed on the grounds it was barred by the statute

of limitations and principles of *res judicata*. (Ill. Rev. Stat. 1987, ch. 110, pars. 2—619(a)(4), (a)(5).) The heirs contend their complaint was improperly dismissed on those grounds and that the trial court abused its discretion in denying them discovery and leave to amend their complaint. We affirm.

David Polk was one of six Polk siblings who owned all the shares in the three closely held defendant corporations, Polk Bros., Inc., Cafco Builders, Inc., and Rand Realty and Development Co., Inc., as of 1955. At the time the complaint was filed, Sol Polk (another of the six Polk siblings), Michael A. Crane and Lester Bachmann were the directors and officers of the defendant corporations and of the Polk Foundation allegedly funded in 1957 with the stock acquired from David Polk's estate. Sol Polk's executors were later substituted as party defendants in his stead below. In addition to David and Sol, the Polk siblings included brothers Harry, Samuel and Morris and their sister, Goldie Luftig.

David Polk's will nominated and appointed his brother, Samuel H. Polk, as executor. It further directed that his executor employ the law firm of Wisch, Crane, and Cotter to probate the estate. When David Polk died, the stock he owned in the defendant corporations was sold pursuant to the terms of his will which, in turn, directed that the stock be sold by his executor according to amended written survivorship agreements he had executed incident to the defendant corporations. Under these amended survivorship agreements, the surviving siblings and/or the defendant corporations had the option of buying the deceased sibling's shares of stock at the book value of the net assets of the respective corporations as of the close of the fiscal year preceding the date of death (in the case of Polk Bros.) or as shown by the semiannual balance sheet (in the case of Cafco) or the last balance sheet (in the case of Rand Realty) plus, in the case of Polk Bros., 1% of the net sales during the current fiscal year up to the date of death. Of 5,000 shares of Polk Bros. common stock, David Polk owned 700; of 9,500 shares of Rand Realty common stock, he owned 1,330; of 500 shares of Cafco preferred stock he owned 70; and of 1,480 shares of Cafco common stock, he owned 207. The value of the stock was to be determined by the auditor or accountants regularly employed by the corporation, and the valuation was to be binding on the parties, their heirs, representatives, administrators and executors. The accountants regularly employed by the defendant corporations were Beckerman, Terrell and Co.

Plaintiff Marian Polk Fried petitioned the probate court for admission of David Polk's estate to probate on May 16, 1955. She swore

under oath at the time that she knew the contents of the petition and the statements therein were true. She petitioned that Samuel Polk, David Polk's named executor, be appointed as such, stating that he was "qualified and willing to act as executor."

On October 24, 1955, Samuel Polk, as executor, filed with the probate court a petition for approval of the sale of David Polk's stock in the corporate defendants according to the terms of the amended survivorship agreements. In pertinent part, it was alleged therein:

"THAT BECKERMAN, TERRELL AND CO., certified public accountants, regularly employed by said POLK BROS., CAFCO BUILDERS, INC. AND RAND REALTY AND DEVELOPMENT CO. on October 4, 1955, certified that in accordance with the provisions of the survivorship agreements *** and the Articles of Incorporation and the By-Laws of RAND REALTY AND DEVELOPMENT CO., that the total value of this stock interest which said DAVID D. POLK, Deceased, had in POLK BROS. CENTRAL APPLIANCE AND FURNITURE CO., and its subsidiaries aggregate the sum of $430,719.94; CAFCO BUILDERS, INC., the sum of $52,127.04; and in RAND REALTY AND DEVELOPMENT CO., the sum of $147,132.57."

Beckerman's certification showed an adjusted net worth of Polk Bros. as of June 30, 1954, of $1,786,967.06. Added to that was $338,471.67, representing 1% of the current fiscal year's net sales of $33,847,167.26 up to April 30, 1955. The sum of those two figures, $2,125,438.73, divided by 5,000 shares, yielded a per share value of $425.08. The final aggregate valuation for Polk Bros. stock of $430,719.94 includes the book value of David Polk's shares of common stock in two subsidiaries of Polk Bros. as well.

The same day the petition was filed, the probate court entered its order finding the matters contained in the executor's petition to be true and approving the sale of David Polk's stock at the valuation specified. The court's order expressly declared the right of Polk Bros. and Cafco to purchase and acquire David Polk's stock interests in said corporations and, further, that Rand Realty also had a right to purchase and acquire the stock interest David Polk had in that corporation. All told, the estate was entitled to receive in excess of $625,000 for David Polk's shares in the corporate defendants.

On July 2, 1956, Marian Polk Fried, as a cotrustee of David Polk's estate, acknowledged the receipt from the executor of all of the assets on hand from the final account of David Polk's estate. The other heirs, then minor children, were represented in the estate by

court-appointed guardians *ad litem* for proof of will and final report. Richard L. Phelan as guardian *ad litem* approved the executor's final account and report, certifying that he had examined it and had no objection thereto. The estate was closed in 1956. Thirty-one years later, in December 1987, David Polk's heirs filed the instant suit in McLean County, Illinois, and the cause was later transferred on defendant's motion to Lake County, Illinois.

The heirs' six-count complaint alleged in pertinent part that prior to and after the death of David Polk, Sol Polk directly or indirectly retained the services of attorney Benjamin Crane and accountants Beckerman, Terrell and Co. to handle all of his personal business, the business of the defendant corporations and the estates of the then-deceased Polk brothers David, Harry, Samuel and Morris, thereby creating a fiduciary duty in Sol Polk and those he dominated to the families of the deceased brothers; that prior to December 1948 the Polk siblings, accountants and attorney had been and were at the time of David Polk's death under the domination and direction of Sol Polk; that the formula for determining the value of the stock which could be acquired by surviving siblings was mandated by Sol Polk without discussion, negotiation or information and the survivorship agreements were entered into only because "Sol Polk had ordered it and he ruled by edict to the exclusion of others"; that David Polk's stock in the defendant corporations was erroneously evaluated in his estate in that the evaluations were not the true market value of David Polk's 700 shares which would presently have been worth in excess of $26 million; that Sol Polk and Goldie Luftig are the sole surviving siblings, the survivor of whom would be entitled to claim the stock of the predeceased siblings, and that prior to and subsequent to the death of David Polk, vast inequities have occurred such as the payment to Sol Polk of a $1 million salary per annum; that the stock of David Polk was acquired and used in May 1957 to fund the Polk Foundation, ostensibly a charitable organization, with present assets in excess of $40 million; that Sol Polk, Michael A. Crane and Lester Bachmann are interested parties to the action because of their control of the assets of the defendant corporations and the Polk Foundation inasmuch as the transfers of stock were fraudulent and void; that due to the conspiracy of silence established by Sol Polk, the heirs have and had no knowledge about the deception alleged until the filing in 1987 of the pending lawsuit by Polk Bros. against Bruce Bachmann as Goldie Luftig's guardian seeking to acquire the stock of Goldie Luftig; and that the transfer of the ownership of David Polk's stock is void, ownership should remain in the heirs and they are entitled to the present value

thereof set off by amounts already received or, alternatively, to the true value of the stock at the time of David Polk's death, less amounts received, plus a reasonable sum representing the income which would have been derived therefrom. It was further alleged that the heirs' complaint was based on their best information and belief inasmuch as the defendants refused to divulge information requested as part of a continuing conspiracy of silence. In each of the six counts, the heirs prayed for judgment against each of the corporate and individual defendants in the amount of $25,400,000.

The defendants filed a motion to dismiss pursuant to section 2—619 of the Civil Practice Law based on the grounds of *res judicata* and the statute of limitations. (Ill. Rev. Stat. 1987, ch. 110, pars. 2—619(a)(4), (a)(5).) Plaintiffs responded, defendants replied, the court heard arguments, and it granted the motion to dismiss on both grounds asserted.

The heirs argue *res judicata* does not apply because the instant proceedings present a different cause of action than that presented in the probate proceedings; the defendants were not parties to the probate proceeding; the issue of the defendants' fraud was never litigated in the probate proceeding; and they did not have a full and fair opportunity to litigate valuation in those proceedings.

■ The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same claim, demand or cause of action. (*Kinzer v. City of Chicago* (1989), 128 Ill. 2d 437, 446; *Thorleif Larsen & Son, Inc. v. PPG Industries, Inc.* (1988), 177 Ill. App. 3d 656; *Toepper v. Cooker* (1986), 150 Ill. App. 3d 206.) The doctrine is based on the public policy which favors judicial economy and the finality of litigation (*Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423; *In re Marriage of Potts* (1989), 186 Ill. App. 3d 273, 275) and is divided into two branches: *res judicata*, or estoppel by judgment, and collateral estoppel, or estoppel by verdict (*Potts*, 186 Ill. App. 3d at 276; *Reynolds Metals Co. v. V.J. Mattson Co.* (1984), 125 Ill. App. 3d 554). Collateral estoppel is also referred to as "issue preclusion." *People v. Moore* (1989), 184 Ill. App. 3d 102, 104.

■■ The essential elements of the first branch, *res judicata*, are an identity of parties, subject matter and cause of action. (*Bismarck Hotel Co. v. Sutherland* (1988), 175 Ill. App. 3d 739.) The test for determining whether two causes of action are the same for *res judicata* purposes is whether they are based on the same facts or whether the evidence necessary to sustain the second cause would have sustained

878

the first cause. (*Thorleif Larsen & Son, Inc.*, 177 Ill. App. 3d at 659; *Cangas v. Marcus Auto Lease Corp.* (1988), 176 Ill. App. 3d 127.) *Res judicata* applies not only to those issues which were actually raised in the first proceeding, but also to any issue which might have been raised in that proceeding. *Potts*, 186 Ill. App. 3d at 276; *Thorleif Larsen & Son, Inc.*, 177 Ill. App. 3d at 659; *Benton v. Smith* (1987), 157 Ill. App. 3d 847.

The second branch, collateral estoppel, applies when a party, or someone in privity therewith, takes part in two separate, consecutive cases arising from different causes of action and some fact controlling, or question material to, the determination of both cases has been adjudicated against that party in the prior case by a court of competent jurisdiction. (*Buttitta v. Newell* (1988), 176 Ill. App. 3d 880; *Service Systems Corp. v. Van Bortel* (1988), 174 Ill. App. 3d 412.) Unlike *res judicata*, collateral estoppel bars subsequent actions only as to the point or question actually litigated and determined in the prior suit, and not as to other matters which might have been litigated and determined. (*Benton*, 157 Ill. App. 3d at 853.) Also unlike *res judicata*, mutuality of parties is not required; only one party or his privy, the one against whom estoppel is asserted, must be identical in the first and subsequent causes of action. (*Service Systems Corp.*, 174 Ill. App. 3d at 419.) Moreover, collateral estoppel will not be applied unless it appears that the party against whom the estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. (*Coronet Insurance Co. v. Booker* (1987), 158 Ill. App. 3d 466, 471.) Whether a party has had a full and fair opportunity to be heard depends on whether the party was denied a procedural, substantive or evidentiary opportunity to be heard on the issue. (*Fred Olson Motor Service v. Container Corp. of America* (1980), 81 Ill. App. 3d 825, 830.) The parties need not have been arrayed on opposite sides in the prior suit, nor must formal issues have been raised between them. *Pechous v. Field Enterprises, Inc.* (1983), 114 Ill. App. 3d 605, 608.

To be effective as a prior adjudication, the first action must result in a final judgment on the merits. (*Relph v. Board of Education* (1981), 84 Ill. 2d 436.) A judgment is on the merits in the sense that it may be pleaded in bar of a subsequent action where it amounts to a decision as to the respective rights and liabilities of parties based on the ultimate facts or the state of the facts disclosed by pleadings or evidence, or both, and on which the right of recovery depends irrespective of formal, technical or dilatory objections or contentions. (*Foreman v. Martin* (1975), 26 Ill. App. 3d 1028; *Lytton v. Cole*

(1964), 54 Ill. App. 2d 161, 175.) One is not estopped or barred by a prior adjudication if he was not a party to such action and does not stand in a relation of privity to one who was a party. (*City of Naperville v. Morgan* (1984), 126 Ill. App. 3d 91.) "Privity" for *res judicata* or collateral estoppel purposes contemplates a mutual or successive relationship to some property rights which were the subject matter of the prior litigation. *Simcox v. Simcox* (1988), 175 Ill. App. 3d 473, *appeal allowed* (1989), 124 Ill. 2d 562.

■ As to the first branch of *res judicata*, estoppel by judgment, we agree with the heirs that the instant cause is not the same cause of action as the probate proceeding. Applying the test for determining whether the two causes of action are the same, the evidence necessary to sustain the present cause of action includes facts which were not present in the probate proceeding, and this same evidence would not have sustained the first cause. A case which illustrates when two causes of action may be found to be the same for *res judicata* purposes is *Thorleif Larsen & Son, Inc. v. PPG Industries, Inc.* (1988), 177 Ill. App. 3d 656. There, the plaintiff's prior suit in Cook County to foreclose on a mechanic's lien, which was dismissed, was found to be essentially the same cause of action as the plaintiff's suit filed in DuPage County on the underlying contract. This court found the defendant there had acquiesced in the plaintiff's splitting of the cause of action, however, and declined to apply the doctrine of *res judicata*, which would have deprived the plaintiff of any remedy whatsoever. In the case at bar, there is no identity of the causes of action in the probate proceeding and in the heirs' instant complaint. Moreover, it is clear that not all the defendants here were parties to the probate proceeding even assuming, *arguendo*, as the defendants contend, the corporate defendants were parties there inasmuch as their right to repurchase David Polk's stock at the value certified was determined there. Also, unlike *Hooks v. Bonner* (1989), 187 Ill. App. 3d 944, cited with our leave as supplemental authority by the defendants, neither Samuel Polk, nor Benjamin Crane, nor Beckerman, Terrell & Co.—all parties in the probate proceeding—are named defendants here. Accordingly, we conclude there was no basis for dismissal of the heirs' complaint on the ground of estoppel by judgment.

■ We do agree with the defendants, however, that dismissal was proper on the alternate ground of estoppel by verdict or collateral estoppel. As noted above, collateral estoppel applies when a party takes part in two separate, consecutive cases arising from different causes of action and some fact controlling, or question material to, the determination of both cases has been adjudicated against that

party in the prior case. (*Buttitta v. Newell* (1988), 176 Ill. App. 3d 880.) Mutuality of parties is not a prerequisite to the application of collateral estoppel (*Ogle v. Fuiten* (1983), 112 Ill. App. 3d 1048, 1051, *aff'd* (1984), 102 Ill. 2d 356), and it may be applied as long as the party against whom application of the doctrine is sought is identical in both actions and had a full and fair opportunity to litigate the issue which was necessarily determined in the prior proceeding. *Daniel v. Village of Hoffman Estates* (1987), 165 Ill. App. 3d 772; *Coronet Insurance Co. v. Booker* (1987), 158 Ill. App. 3d 466.

First, the parties against whom the defendants seek application of the doctrine of collateral estoppel are the heirs, plaintiffs here. The heirs were also parties to the probate proceeding. Second, a question material to the determination of both causes—the value of the stock in the estate—was decided in the probate proceeding contrary to the position taken by the heirs in the present cause that the true market value of the stock was many times more the value of it as determined in the probate proceeding.

The heirs argue that the issue of the defendants' fraud and/or breach of fiduciary duty raised in their instant complaint was not actually litigated in the probate proceedings and, thus, collateral estoppel should not be applied to prevent the instant cause from going forward. The heirs claim this fact is the critical feature distinguishing the present cause from *Lytton v. Cole* (1964), 54 Ill. App. 2d 161, which was relied on by the defendants and the trial judge in support of dismissal. In *Lytton*, six years after the estate was closed, the principal beneficiary, Walter Lytton, sued the executors of the estate for the fraud they allegedly perpetrated in suppressing the value of the shares in the estate in order to sell the stock at a low price to friendly individuals so that the executors could maintain control of the Lytton's Department Store. Dismissal of the fraud suit on *res judicata* grounds was affirmed on review where it appeared from the record that all the facts alleged in the amended fraud complaint were formerly adjudicated in the probate court by virtue of the beneficiaries' petition there to remove the executors. Although that petition was denied, and the word "fraud" was not used there, in making its decision to deny the petition to remove the executors, the probate court necessarily considered the beneficiaries' accusation that the executors breached their fiduciary duty by conspiring to sell the Lytton's stock held by the estate at a low price to friendly persons controlled by them. Accordingly, the court found the beneficiaries' present action was barred under the doctrine of *res judicata*.

As the defendants point out, the heirs' contention that none

of the issues raised in the present complaint were ever raised in any manner during the probate proceedings is not true. The valuation of the stock—which is the cornerstone of the heirs' present complaint—actually was decided in the probate proceeding. In seeking to avoid the application of *Lytton*, the heirs argue that their theory on appeal is not that the wrong method of valuation was used but, rather, that false figures were used in computing the book value due to the defendants' fraud. The heirs' complaint does not allege this theory, however. Rather, it alleges the evaluation was erroneous because it did not reflect the "true market value" which, they allege, was many times more. It is well settled that the theory upon which the case was submitted to the trial court is treated as the law of the case on appeal and a theory not presented to the trial court is waived for purposes of appeal. (*Burys v. First Bank* (1989), 187 Ill. App. 3d 384; *Cosentino v. Price* (1985), 136 Ill. App. 3d 490.) Moreover, on appeal from dismissal of a complaint, a plaintiff cannot argue or rely upon facts which are totally absent from the complaint. *Hulse v. Kirk* (1975), 28 Ill. App. 3d 839, 846.

■■ The heirs' further argument that collateral estoppel does not apply because they did not have a full and fair opportunity to litigate the valuation of the stock in the probate proceeding because no evidentiary hearing was held there is without merit. As noted in *Lytton*, "it is not necessary that the prior adjudication be based on facts proved, but it is sufficient that the judgment was based on facts alleged and admitted." (*Lytton*, 54 Ill. App. 2d at 176.) Here, in her sworn petition to the probate court, Marian Polk Fried requested the admission of David Polk's estate to probate and the appointment of Samuel Polk as executor thereof, stating that he was qualified and willing to act as executor. Upon Samuel Polk's verified petition representing the valuation of David Polk's stock in the defendant corporations according to the terms of David Polk's will was the book value of the defendant corporations plus, in the case of Polk Bros., 1% of the current fiscal year's net sales, the court found the values of the respective stocks to be as certified. Further, Marian Polk Fried acknowledged receipt from the executor of all of the assets on hand from the final account of David Polk's estate. Similarly, the guardian *ad litem* of the remaining heirs certified he examined the executor's final account and report and had no objection thereto. Samuel Polk's petition clearly alleged the method of valuation of the stock as provided for in the survivorship agreements referred to in David Polk's will. Moreover, the accountants' certification of the value of the stock included in the record very clearly was based on summary figures

shown for net assets and net sales of the defendant corporations which neither Marian Polk Fried nor Samuel Polk nor the minor heirs' guardian *ad litem* questioned.

In sum, we believe the record shows the heirs had a full and fair opportunity to litigate the valuation of the stock which was necessarily determined in the probate proceeding. That they did not avail themselves of the opportunity to do so does not militate against collaterally estopping them from doing so now. We conclude the court did not err in dismissing the heirs' complaint on the ground of collateral estoppel. Inasmuch as the trial court's judgment may be sustained on any basis justified by the record (*Zonta v. Village of Bensenville* (1988), 167 Ill. App. 3d 354), we find it unnecessary to consider whether the dismissal could also be sustained on the ground that the heirs' complaint was time barred.

The heirs' final contentions are that the trial court abused its discretion by denying them discovery and leave to file an amended complaint.

■■■ They rely on *Smith v. St. Therese Hospital* (1980), 87 Ill. App. 3d 782, in support of their argument that the court abused its discretion in denying them discovery pending its decision on the defendants' motion to dismiss. As defendants argue, *Smith* is distinguishable. The basis for the defendants' motion to dismiss in *Smith* was based on section 48(1)(i) (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(i)), which is presently codified as section 2—619(a)(9) (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9)). That section provides as a ground for dismissal that the claim or demand is barred by "other affirmative matter" avoiding the legal effect of or defeating the claim or demand. The trial court was found to have abused its discretion in dismissing the plaintiff's motion there because defendant's alleged affirmative matter did not amount to an affirmative defense. Rather, the matter alleged—that the plaintiff's bill of particulars showed she only had evidence implicating another defendant as manufacturer of the drug which she had ingested and reacted to causing her vision impairment—amounted to nothing more than evidence upon which the defendant expected to contest a material fact stated in the complaint. Accordingly, dismissal under section 48(1)(i) was found to be improper. Moreover, the trial court was found to have abused its discretion in acting on the motion to dismiss before the plaintiff could reasonably complete her efforts to discover the source of the drug administered to her.

There is no question that the grounds for the dismissal here, *res judicata* and the statute of limitations, are affirmative defenses. Fur-

ther, unlike *Smith,* there was no factual dispute here as to what was decided in the probate proceedings, no dispute that the valuation and sale of the stock took place in 1956 and no dispute that the heirs' suit was filed in 1987. The heirs, in fact, do not argue how they were prejudiced by the court's denial of discovery. A party asserting reversible error must provide a clear showing of prejudice inasmuch as a court of review will not presume that the error affected the outcome of the hearing. (*Schaffner v. Chicago & North Western Transportation Co.* (1987), 161 Ill. App. 3d 742.) Accordingly, we conclude the court did not abuse its discretion in denying the heirs' discovery prior to considering the defendants' motion to dismiss.

We also agree with the defendants that the court did not abuse its discretion in denying the heirs leave to file an amended complaint where the heirs did not tender a proposed amendment to the trial court so as to allow this court to assess whether they were prejudiced by the court's refusal (*Hassiepen v. Marcin* (1974), 22 Ill. App. 3d 433) and where they have made only vague footnote references here as to what amendments could have been made to "strengthen" the factual basis of the allegations in their complaint (*Christensen v. Numeric Micro, Inc.* (1987), 151 Ill. App. 3d 823, 831-32). Moreover, as defendants point out, the heirs had the opportunity under section 2—619 to challenge the motion to dismiss through the submission of affidavits or other proof establishing facts which would obviate the grounds for dismissal alleged by the defendants. (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(c).) Although the heirs point to "additional facts" included in their response to the defendants' motion to dismiss which they assert would have been pleaded in an amended complaint, most of the "facts" are mere conclusions or are unsupported by affidavits or other proof as required by section 2—619(c) of the Civil Practice Law.

We conclude the court did not abuse its discretion in denying the heirs discovery or leave to amend their complaint.

The judgment of the circuit court of Lake County is affirmed and costs awarded to defendants as requested.

Judgment affirmed.

REINHARD and WOODWARD, JJ., concur.