**PEPSICO INC. and Pepsi–Cola Panamericana, S.A., Petitioners,**

v.

**OFICINA CENTRAL DE ASESORIA Y AYUDA TECNICA, C.A., C.A. Embotelladora Antimano, Embotelladora Aragua, S.A., Embotelladora Barinas, S.A., Embotelladora Carabobo, S.A., C.A. Embotelladora Caracas, Embotelladora Caroni, S.A., C.A. Embotelladora Coro, Gaseosas Orientales, S.A., Embotelladora Guarico, S.A., Embotelladora Guayana, S.A., Hit De Venezuela, S.A., Embotelladora La Perla, S.A., C.A. Embotelladora Lara, Embotelladora Maturin, S.A., C.A. Embotelladora Nacional, Embotelladora Orinoco, S.A., C.A. Embotelladora Tàchira, C.A. Embotelladora Valera, Respondents.**

No. 96 Civ. 7817 (JSR).

United States District Court, S.D. New York.

Oct. 28, 1996.

**70**

Cravath Swaine & Moore by Thomas Barr, Sandra Goldstein, Katherine Forrest, New York City, for petitioners.

Rogers & Wells by James Benedict, Marlin Seidel, New York City, for respondents.

### MEMORANDUM ORDER

RAKOFF, District Judge.

By order to show cause, petitioners move for immediate determination of a Petition filed October 16, 1996 that seeks to compel arbitration of respondents' contractual disputes with petitioners and to enjoin respondents from further litigating those disputes in the courts of Venezuela. Respondents, in turn, ask the Court to decline jurisdiction as a matter of international comity. After full consideration of the parties' written submissions and oral arguments, the Court denies the motion for immediate relief but retains jurisdiction of the underlying Petition, subject to a 60–day stay of proceedings to allow the Venezuelan court to determine, if it chooses, a threshold question of Venezuelan law.

The essential facts may be stated briefly. Petitioner PepsiCo Inc., a North Carolina corporation with its principal place of business in Purchase, New York, wholly owns co-petitioner Pepsi–Cola Panamericana, S.A., a Venezuelan corporation with general offices in Caracas, Venezuela. Respondent Oficina Central De Asesoria y Ayuda Tecnica, C.A. ("OCAAT") is a Venezuelan corporation that represents, manages and controls the co-respondent bottling companies (the "Cisneros bottling companies"), which are Venezuelan companies owned by Diego Cisneros, a Venezuelan citizen. As of January 1, 1988, petitioners, by written contract, granted each Cisneros bottling company the exclusive right to bottle Pepsi–Cola in its respective area of Venezuela for a term of 15 years.

Paragraph 23 of each bottling contract provides that any party prematurely terminating the contract must pay specified liquidated damages to the other party. Paragraph 30 of each contract states in pertinent part that: "This Agreement shall be governed by the laws of the Republic of Venezuela. Any controversy or claim arising out of or relating to this contract, or the breach thereof, ... shall be finally settled by arbitration in accordance with the rules of conciliation and arbitration of the International Chamber of Commerce.... The arbitration, including the rendering of an award, shall take place in New York, New York, United States of America.... The arbitrators shall apply the substantive law of the State of New York, United States of America ..."

By letter dated August 16, 1996, an authorized representative of the Cisneros bottling companies terminated each of these contracts, explaining that the bottling companies were defecting to Coca Cola. Petitioners responded on August 22, 1996 by demanding payment within 60 days of 56,240,446,386 bolivars (approximately $118,400,940) in liqui-

dated damages, pursuant to paragraph 23 of the contracts. Before the sixty days expired, the bottling companies, on October 1, 1996, petitioned a civil court in Caracas, Venezuela for a declaration that the amount of liquidated damages actually due petitioners was a much smaller sum. In support of the petition, the bottling companies alleged, *inter alia,* that the arbitration provision of paragraph 30 of the bottling contracts was "inoperative" because of its "obscurity and ambiguity" and because it was, in any event, "not applicable to the present case." Petitioners responded on October 11, 1996 by filing a formal request for arbitration with the International Chamber of Commerce, and then, on October 16, 1996, by filing the Petition now before this Court.

▆▆ Respondents expressly concede this Court's subject matter jurisdiction and power to compel arbitration in this case.[1] They nonetheless urge the Court to decline jurisdiction in favor of the Venezuelan court. In this regard, Article II.3 of the United Nations Convention On The Recognition And Enforcement Of Foreign Arbitral Awards, to which both the United States and Venezuela are signatories, provides that "The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement [to arbitrate] ... shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed."[2] As noted, respondents, in their papers previously filed in the Venezuelan

court, contend that the arbitration agreement set forth in paragraph 30 of the bottling contracts is either entirely "inoperative" or else "not applicable" to a dispute over the calculation of liquidated damages. Whether or not this is so is plainly a matter of Venezuelan law, for paragraph 30 flatly states that the contracts are governed by the laws of Venezuela.[3]

While the Court is not blind to the facially flimsy aspect of the objections to arbitrability raised in the papers respondents have filed in the Venezuelan court, respondents have submitted some authority to support their contention that the objections have arguable merit. *See Iberian Tankers Co. v. Terminales Maracaibo, C.A.,* 322 F.Supp. 73, 75 (S.D.N.Y.1971). In any event, in the absence of any challenge to the adequacy of the Venezuelan legal process (*see* Tr., 10/21/96, at 26–27; *see also Blanco v. Banco Industrial de Venezuela, S.A.,* 997 F.2d 974, 981 (2d Cir. 1993)) the Venezuelan court that already has the issue of arbitrability before it ought to be afforded the initial opportunity to determine this threshold question of Venezuelan law before a non-Venezuelan court is called upon to do so.[4]

It makes obvious good sense, as well as offering a considerable savings of judicial time and resources, for this Court to have the benefit of a Venezuelan court's speedy determination of a threshold question of Venezuelan law that must be resolved before this or any other court can compel arbitration in this case. Nor will any material delay be occasioned thereby, for respondents have

---

1. Personal jurisdiction over every respondent except possibly OCAAT is also clear. *See Victory Transport Inc. v. Comisaria General de Abastecimientos y Transportes,* 336 F.2d 354, 363 (2d Cir.1964).

2. The Convention is set forth in full at 9 U.S.C. § 201. While the 1996 edition of United States Code Annotated does not list Venezuela as a signatory, *see* 9 U.S.C.A. § 201 (West Supp. 1996), petitioners have provided documents of the State Department indicating that Venezuela is in fact a signatory. *See* United States Department of State, Treaties in Force 316 (1996).

3. By contrast, New York law comes into play under paragraph 30 only after a contractual dispute is referred to arbitration. Put another way, the language of paragraph 30 clearly contem-

plates that matters subject to determination by a court, such as threshold disputes over arbitrability (*see First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, ——, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995); *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 45 (2d Cir.1993)) will be governed by Venezuelan law, while matters to be determined by arbitrators will be governed by New York law.

4. While petitioners question whether respondents' petition in the Venezuelan court has formally placed this threshold issue of arbitrability before that court, they do not contest that the answer to that petition that they must file by November 21, 1996 will challenge the jurisdiction of the Venezuelan court on the ground that the underlying dispute is required to be arbitrated.

**72**

represented, through the sworn declaration of their Venezuelan law expert, that the Venezuelan court is required to decide such jurisdictional issues within five working days of the November 21, 1996 date when petitioners are required to file their answering papers in the Venezuelan action. *See* Declaration of Oscar E. Ochoa dated Oct. 21, 1996 at ¶ 10. In addition to considerations of legal economy and international comity, such deference is also consistent with the parties' reasonable expectations: for when they expressly agreed that these contracts, involving largely Venezuelan activities by mostly Venezuelan parties, would be governed by Venezuelan law except as to disputes submitted to arbitration, they plainly anticipated that such disputes as a court might have to decide (such as arbitrability) would quite likely be submitted to a Venezuelan court.

Accordingly, the motion for immediate determination of the Petition is denied. At the same time, this Court is mindful not only of the strong policy favoring prompt arbitration expressed in the U.N. Convention, but also of the many facial indications that respondents are utilizing dubious strategems to try to evade their plain contractual obligations. A thimblerig is still a scam even if the thimbles be courts of separate sovereigns. To entirely eschew oversight of this controversy in such circumstances would be a derogation of duty and an invitation to fraud. *See Caspian Investments, Ltd. v. Vicom Holdings, Ltd.,* 770 F.Supp. 880, 887 (S.D.N.Y.1991). Accordingly, notwithstanding the pendency of the Venezuelan action, this Court will retain jurisdiction of the underlying Petition in this case, *see China Trade and Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 36 (2d Cir. 1987), but stay further proceedings for a period of 60 days (i.e., through December 27, 1996), *see Borden, Inc. v. Meiji Milk Prod. Co., Ltd.,* 919 F.2d 822, 829 (2d Cir.1990), in order to afford the Venezuelan court the opportunity to determine, if it chooses, the threshold question of arbitrability under Venezuelan law.

SO ORDERED.