**NATIONAL BROADCASTING COMPANY, INC. and NBC Europe, Inc., Appellants,**

v.

**BEAR STEARNS & CO., INC.; Merrill Lynch & Company; Salomon Brothers, Inc.; SBC Warburg, Inc.; Violy Byorum & Partners; and TV Azteca S.A. de C.V., Appellees.**

No. 98–7468.

United States Court of Appeals, Second Circuit.

Argued July 13, 1998.

Decided Jan. 26, 1999.

---

1. The Honorable Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation.

2. Each of the defendants eventually reconsidered its position and sent plaintiff the returns.

Frank H. Wohl, Lankler Siffert & Wohl, New York, NY (Harold E. Schimkat, Lankler Siffert & Wohl, Susan E. Weiner, National Broadcasting Company, Inc., New York, NY, of counsel), for Appellants.

Alan H. Kaufman, Jones, Day, Reavis & Pogue, New York, NY and William C. Fredericks, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY (E. Michael Bradley and Mark S. Mandel, Jones, Day, Reavis & Pogue, Yocheved Cohen and David Gruenstein, Wachtell, Lipton, Rosen & Katz, New York, NY, Keith M. Fleischman, Milberg Weiss Bershad Hynes & Lerach LLP, of counsel), for Appellees.

Before: MINER and CABRANES, Circuit Judges, and CHATIGNY, District Judge.*

JOSÉ A. CABRANES, Circuit Judge:

The question presented is whether a commercial arbitration conducted in Mexico under the auspices of the International Chamber of Commerce, a private organization headquartered in France, is a "proceeding in a foreign or international tribunal" as those words are used in 28 U.S.C. § 1782.[1] We hold that it is not.

National Broadcasting Company, Inc. and NBC Europe, Inc. (jointly, "NBC"), respondents in an arbitration proceeding in Mexico initiated by the Mexican television broadcasting company TV Azteca S.A. de C.V. ("Azteca"), appeal from an order of the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*) quashing subpoenas directed by NBC to Azteca's investment bankers and advisors, Bear Stearns & Co., Inc., Merrill Lynch & Company, Salomon Brothers, Inc., SBC Warburg, Inc. and Violy Byorum & Partners (the "Third Parties")[2] and denying

---

\* The Honorable Robert N. Chatigny, of the United States District Court for the District of Connecticut, sitting by designation.

1. Section 1782 provides in relevant part that:

   The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.
   28 U.S.C. § 1782(a).

2. Bear Stearns & Co., Inc., Merrill Lynch & Company, Salomon Brothers, Inc. and SBC Warburg, Inc. are investment bankers for Azteca and

NBC's cross-motion to enforce the subpoenas. The district court quashed the subpoenas, concluding that 28 U.S.C. § 1782, which gives United States courts the authority to order testimony or production of evidence for use "in a proceeding in a foreign or international tribunal," does not apply to private commercial arbitration under the auspices of non-governmental organizations. *In re: The Application of National Broadcasting Co.*, No. M–77, 1998 WL 19994 (S.D.N.Y. Jan. 21, 1998). We affirm.

## I. BACKGROUND

In 1994, NBC and Azteca, a then-privately-held Mexican television broadcasting company, entered into an agreement under which NBC would provide Azteca with programming and other services. In exchange, NBC's compensation included the option to purchase up to 10% of Azteca's shares at any time before May 1997 according to a preset pricing formula. The agreement also provided that any disputes would be resolved through private commercial arbitration administered by the International Chamber of Commerce ("ICC"), a private organization based in Paris, France, under ICC rules and Mexican law. Purporting to act under the agreements, NBC on April 3, 1997 sought to purchase 1% of Azteca's shares. On April 28, 1997, Azteca, alleging that NBC had failed to perform under the agreement, initiated arbitration against NBC in Mexico pursuant to the 1994 agreement. On July 15, 1997, NBC filed its answer, and on July 29, 1997, amended its answer and included counterclaims; the counterclaims alleged that Azteca improperly induced NBC to forgo exercising its option for the full 10% of Azteca's shares by leading NBC to believe, among other things, that (i) Azteca had no plans to conduct an initial public offering of securities ("IPO"), and (ii) Azteca's estimate of the value of the company's shares was not significantly above the contractually agreed exercise price. Azteca replied that it never contemplated a public offering or misstated the value of its shares during the relevant time period.

In anticipation of the ICC arbitration proceeding in Mexico but prior to the appointment of the arbitration panel, NBC applied *ex parte*, pursuant to 28 U.S.C. § 1782, to the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge* ) for authorization to serve document subpoenas on the six third-party financial institutions engaged by Azteca with regard to its IPO plans. On August 1, 1997, Judge Batts granted the application, and NBC later served the subpoenas, which demanded the production of documents bearing on the timing of Azteca's IPO plans and the valuation of Azteca shares. Within a month, Azteca and five of the third-party financial institutions moved to quash the subpoenas; NBC cross-moved to compel compliance with them.

On January 16, 1998, Judge Sweet granted the motion to quash the subpoenas and denied NBC's cross-motion, concluding that the term "foreign or international tribunal" in 28 U.S.C. § 1782, a statute authorizing district courts to assist discovery efforts in connection with proceedings before such tribunals, does not encompass private international commercial arbitration. This timely appeal followed.

## II. DISCUSSION

We review the district court's interpretation of 28 U.S.C. § 1782 *de novo*. *See Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 26 (2d Cir.1998); *United States v. Ribadeneira*, 105 F.3d 833, 834 (2d Cir.1997) (per curiam); *United States v. Proyect*, 989 F.2d 84, 87 (2d Cir.), *cert. denied*, 510 U.S. 822, 114 S.Ct. 80, 126 L.Ed.2d 49 (1993).

■ Ordinarily, because commercial arbitration is a creature of contract, only the parties to the arbitration contract are bound to participate. *See, e.g., AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to

Violy Byorum & Partners is Azteca's financial advisor. NBC also served a subpoena on Allen & Company, another of Azteca's investment bankers, but Allen & Company neither moved to quash nor produced documents. It indicated that it would abide by the decision of the court concerning the enforceability of the subpoenas.

submit to arbitration any dispute which he has not agreed so to submit.") (internal quotation marks and citation omitted); *Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995). If discovery were to be obtained from the Third Parties—none of which was a party to the arbitration agreement at issue here—the authority to compel their participation would have to be found in a source other than the parties' arbitration agreement. That source, NBC claims, is § 1782.

### A.

Appellees first argue that § 1782, regardless of its meaning, is not available to NBC because the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, which provides a role for the federal courts in arbitration, is the exclusive means for obtaining evidence from non-parties in connection with private arbitration proceedings.

The FAA applies to private commercial arbitration conducted in this country; and it applies also to arbitrations in certain foreign countries by virtue of legislation implementing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 7 I.L.M. 1046 (implemented at 9 U.S.C. §§ 201–08) (the "New York Convention"), and the Inter–American Convention on International Commercial Arbitration, Jan. 30, 1975, 14 I.L.M. 336 (implemented at 9 U.S.C. §§ 301–07) (the "IAC"). The statute principally provides for the enforcement of agreements to arbitrate, supplying judicial assistance to facilitate arbitration, and providing for confirmation, vacation, or modification of the arbitrators' resulting decisions.

Section 7 of the FAA[3] provides statutory authority for invoking the powers of a federal district court to assist arbitrators in obtaining evidence. Under this provision, arbitrators may subpoena witnesses and direct those witnesses to bring material documentary evidence to an arbitral hearing; if witnesses fail to comply, the district court for the district in which the arbitrators are sitting may compel compliance with such subpoenas. *See* 9 U.S.C. § 7.

■ The methods for obtaining evidence under § 7 are more limited than those under § 1782 in two, and possibly three, ways. First, § 7 explicitly confers authority only upon *arbitrators;* by necessary implication, the *parties* to an arbitration may not employ this provision to subpoena documents or witnesses. *See* 9 U.S.C. § 7; *see also Burton v. Bush*, 614 F.2d 389, 390 (4th Cir.1980) ("While an arbitration panel may subpoena documents or witnesses, the litigating parties have no comparable privilege.") (citations omitted), *cited with approval in St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 591 (7th Cir. 1992); Beth H. Friedman, *The Preclusive Effect of Arbitral Determinations in Subsequent Federal Securities Litigation*, 55 Fordham L.Rev. 655, 672 & n. 126 (1987) ("While an arbitration panel has the power to subpoena documents or witnesses, the parties to the arbitration lack the advantage of discovery.") (footnotes omitted). Second, § 7 explicitly confers enforcement authority only upon the "district court for the district in which such arbitrators, or a majority of them, are sitting." Third, the express language of § 7 refers only to testimony before the arbitrators and to material physical evi-

---

**3.** Section 7 reads as follows:

The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7.

dence, such as books and documents, brought before them by a witness; open questions remain as to whether § 7 may be invoked as authority for compelling pre-hearing depositions and pre-hearing document discovery, especially where such evidence is sought from non-parties. *Compare Integrity Ins. Co. v. American Centennial Ins. Co.*, 885 F.Supp. 69, 72–73 (S.D.N.Y.1995) (arbitrator may not rely on § 7 to obtain pre-hearing depositions from non-parties), *with Stanton v. Paine Webber Jackson & Curtis, Inc.*, 685 F.Supp. 1241, 1242–43 (S.D.Fla.1988) (§ 7 permits pre-hearing document production from non-parties), *and Meadows Indem. Co. v. Nutmeg Ins. Co.*, 157 F.R.D. 42, 45 (M.D.Tenn.1994) (§ 7 power to compel document production from third parties at hearing encompasses lesser power to compel production prior to hearing).

If the broader evidence-gathering mechanisms provided for in § 1782 were applicable to proceedings before non-governmental tribunals such as private arbitral panels, we would need to decide whether 9 U.S.C. § 7 is exclusive, in which case the two statutes would conflict. Because we conclude instead that § 1782 does not apply to proceedings before private arbitral panels, we need not reach this issue.

### B.

■ Subsection 1782(a), which contains the disputed term, reads in relevant part as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). Our inquiry begins with the language of the statute itself, and particularly the phrase "foreign or international tribunal," which is not otherwise defined in the statute. Because the term "foreign or international tribunal" is undefined, it is to be given its ordinary or natural meaning. *See FDIC v. Meyer*, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). In support of its position, NBC cites numerous references to private arbitration panels as "tribunals" or "arbitral tribunals" in court cases, international treaties, congressional statements, academic writings, and even the *Commentaries* of Blackstone and Story. This authority amply demonstrates that the term "foreign or international tribunals" does not unambiguously *exclude* private arbitration panels. On the other hand, the fact that the term "foreign or international tribunals" is broad enough to include both state-sponsored and private tribunals fails to mandate a conclusion that the term, as used in § 1782, does include both. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 117 S.Ct. 843, 846–48, 136 L.Ed.2d 808 (1997) (although term "employees" was broad enough to include former employees and Congress did not expressly specify "current employees," use of term in statute was ambiguous). In our view, the term "foreign or international tribunal" is sufficiently ambiguous that it does not necessarily include or exclude the arbitral panel at issue here. Accordingly, we look to legislative history and purpose to determine the meaning of the term in the statute. *See Castellano v. City of New York*, 142 F.3d 58, 67 (2d Cir.1998) ("Where the language is ambiguous, we focus upon the broader context and primary purpose of the statute.") (internal quotation marks and citation omitted); *Motor Vehicle Mfrs. Ass'n v. New York State Dep't of Envtl. Conservation*, 17 F.3d 521, 531 (2d Cir.1994) ("[W]here ambiguity resides in a statute, legislative history and other tools of interpretation may be employed to determine legislative purpose more perfectly.").

### C.

■ The current version of § 1782 was enacted in 1964 as part of legislation to implement recommendations of the Commission on International Rules of Judicial Procedure

(the "Commission"), a body created by Congress in 1958 to "study existing practices of judicial assistance and cooperation between the United States and foreign countries with a view to achieving improvements." Pub.L. No. 85–906, § 2, 72 Stat. 1743 (1958); *see also* S.Rep. No. 85–2392 (1958), *reprinted in* 1958 U.S.C.C.A.N. 5201, 5201, 5203. The Commission recommended a series of changes in domestic civil procedure to accommodate international proceedings, in the hopes that foreign countries would be encouraged to reciprocate with procedural improvements of their own. *See* H.R. Doc. No. 88–88, at 20 (1963).

The § 1782 that emerged from Congress in 1964 replaced the old § 1782,[4] which had provided limited evidence-gathering assistance to a "judicial proceeding in any *court* in a foreign country" (emphasis added), and 22 U.S.C. §§ 270–270g, which conferred certain powers on commissioners or members of "international tribunals." With respect to the revisions to the old § 1782, the House and Senate committee reports stated that "[t]he word 'tribunal' is used to make it clear that assistance is not confined to proceedings before conventional courts," to which the predecessor statute had been expressly limited. H.R.Rep. No. 88–1052, at 9 (1963) ("House Report"); S.Rep. No. 88–1580 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3788 ("Senate Report"). Nonetheless, it is apparent in context that the authors of these reports had in mind only governmental entities, such as administrative or investigative courts, acting as state instrumentalities or with the authority of the state. The House and Senate committee reports, in explaining

the choice of the word "tribunal," state that, "[f]or example, it is intended that the court have discretion to grant assistance when proceedings are pending before investigating magistrates in foreign countries." House Report at 9; Senate Report at 3788. The new § 1782 would facilitate the collection of evidence for use "before a foreign administrative tribunal or quasi-judicial agency." *Id.* The absence of any reference to private dispute resolution proceedings such as arbitration strongly suggests that Congress did not consider them in drafting the statute.

The legislative history behind the replacement of §§ 270–270g is even more compelling than that behind the revisions to the old § 1782. The term "international tribunal" derives directly from §§ 270–270g,[5] which authorized commissioners or members of international tribunals to administer oaths, to subpoena witnesses or records, and to charge contempt. There is no question that the statute applied only to intergovernmental tribunals. Congress had enacted §§ 270–270c in 1930 in direct response to problems that arose in an arbitration proceeding between the United States and Canada, and it added §§ 270d–270g in 1933 explicitly to accommodate proceedings before the United States–German Mixed Claims Commission. *See* Hans Smit, *Assistance Rendered by the United States in Proceedings Before International Tribunals,* 62 Colum. L.Rev. 1264, 1264 (1962) ("*Assistance Rendered by the United States* "). It bears underscoring that those international arbitrations were intergovernmental, not private, arbitrations. More importantly, the old statute applied only to international tribunals "established

---

4. The version of § 1782 in effect prior to the 1964 revisions provided as follows:

> The deposition of any witness within the United States to be used in any judicial proceeding pending in any court in a foreign country with which the United States is at peace may be taken before a person authorized to administer oaths designated by the district court of any district where the witness resides or may be found.
>
> The practice and procedure in taking such depositions shall conform generally to the practice and procedure for taking depositions to be used in courts of the United States. 28 U.S.C. § 1782 (1958) (as reproduced in Hans Smit, *Assistance Rendered by the United*

*States in Proceedings Before International Tribunals,* 62 Colum. L.Rev. 1264, 1267 n. 18 (1962)).

5. Act of July 3, 1930, ch. 851 §§ 1–4, 46 Stat. 1005, 1006; and Acts of July 3, 1930, ch. 851 §§ 5–8, as added June 7, 1933, ch. 50, 48 Stat. 117, 118, *repealed by* Act of Oct. 3, 1964, § 3, 78 Stat. 995. *See also* Hans Smit, *Assistance Rendered by the United States in Proceedings Before International Tribunals,* 62 Colum. L.Rev. 1264, 1266 n. 17, 1269 n. 30, 1270 n. 31, 1271 n. 35, 1273–74 n. 48, 1275 n. 52 (1962) (reproducing statute). Because the repealed sections 270–270g are nowadays difficult to find, we set forth in Appendix A the pertinent provisions.

pursuant to an agreement between the United States and any foreign government or governments." *Id.* at 1269.

It is clear that the 1964 legislation was intended to broaden the scope of the repealed 22 U.S.C. §§ 270–270g by extending the reach of the surviving statute to intergovernmental tribunals not involving the United States. Significantly, however, there is no indication that Congress intended for the new provisions to reach private international tribunals, which lay far beyond the realm of the earlier statute. The House and Senate reports stated that the new § 1782 "eliminates the undesirable limitations[ ] of the assistance extended by sections 270 through 270g." House Report at 9; Senate Report at 3788–89. The "undesirable limitations" were identified earlier in the reports. First, §§ 270–270c

> provided assistance only to a tribunal established by a treaty to which the United States was a party and then only in proceedings involving a claim in which the United States or one of its nationals was interested. This limitation is undesirable. The availability of assistance to international tribunals should not depend on whether the United States has been a party to their establishment or on whether it is involved in proceedings before them.

*Id.* at 3784. Further, §§ 270d–270g were said to "improperly limit the availability of assistance to the U.S. agent before an international tribunal.... Clearly, the interest of the United States in peaceful settlement of international disputes is not limited to controversies to which it is a formal party." *Id.* at 3785.

Contemporaneous academic literature reinforces our conclusion that the "international tribunals" that were encompassed by the repealed §§ 270–270g, and which were the subject of the 1964 legislative reforms, were those created by intergovernmental agreement. The Senate Report, in referring to the undesirable limitations of §§ 270–270g, *see* Senate Report at 3784–85, 3788–89, relied on a 1962 article by Professor Hans Smit, director of a project at the Columbia University School of Law that aided the Commission on International Rules of Judicial Procedure in drafting the bill that included the amended § 1782. In that article, Professor Smit asserted that "an international tribunal owes both its existence and its powers to an international agreement." *Assistance Rendered by the United States* at 1267.[6]

In sum, the legislative history reveals that when Congress in 1964 enacted the modern version of § 1782, it intended to cover governmental or intergovernmental arbitral tribunals and conventional courts and other state-sponsored adjudicatory bodies.

The legislative history's silence with respect to private tribunals is especially telling because we are confident that a significant congressional expansion of American judicial assistance to international arbitral panels created exclusively by private parties would not have been lightly undertaken by Congress without at least a mention of this legislative intention.[7]

The popularity of arbitration rests in considerable part on its asserted efficiency and cost-effectiveness—characteristics said to be at odds with full-scale litigation in the courts,

---

6. In an article written more than three decades later, Professor Smit claims that § 1782, as amended in 1964, should be read to encompass private as well as governmental arbitration. Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals*, 25 Syracuse J. Int'l L. & Com. 1, 5 (1998). It is perhaps enough to say, in response, that Professor Smit's recent article does not purport to rely upon any special knowledge concerning legislative intent, and we find its reasoning unpersuasive. By contrast, statements in the 1962 article, which was specifically relied upon in the House and Senate reports, are probative of Congress's contemporaneous interpretation of the statutory language.

7. If the statutory language unambiguously extended § 1782 to private arbitral tribunals, we would be reluctant to accord great weight to the legislative history's silence with respect to such entities. *See Anderson v. Conboy*, 156 F.3d 167, 179 (2d Cir.1998) (holding that references in legislative history to racial discrimination but not to alienage discrimination could not overcome statutory language clearly encompassing both categories). It seems inappropriate, in the circumstances presented, to read an ambiguous term so broadly that the statute effects a change in public policy which, if actually intended by Congress, very likely would have elicited at least some comment but did not do so.

and especially at odds with the broad-ranging discovery made possible by the Federal Rules of Civil Procedure. *See Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (advantages of arbitration are that it is "usually cheaper and faster than litigation; ... can have simpler procedural and evidentiary rules; ... normally minimizes hostility and is less disruptive of ongoing and future business dealings among the parties") (quoting H.R.Rep. No. 97–542, at 13 (1982), U.S. Code Cong. & Admin. News 1982 at 765, 777). Few, if any, non-American tribunals of any kind, including arbitration panels created by private parties, provide for the kind of discovery that is commonplace in our federal courts and in most, if not all, state courts. If the parties to a private international arbitration make no provision for some degree of consensual discovery *inter se* in their agreement to arbitrate, the arbitrators control discovery, and neither party is deprived of its bargained-for efficient process by the other party's tactical use of discovery devices.

The limitations in § 7 of the FAA, described above, are consistent with these traditional discovery limits, which would be overridden by the application of § 1782 to proceedings before private arbitral panels. Opening the door to the type of discovery sought by NBC in this case likely would undermine one of the significant advantages of arbitration, and thus arguably conflict with the strong federal policy favoring arbitration as an alternative means of dispute resolution. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25–26, 111 S.Ct. 1647, 114

L.Ed.2d 26 (1991); *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir.1998). Furthermore, such broad discovery in proceedings before "foreign or international" private arbitrators would stand in stark contrast to the limited evidence gathering provided in 9 U.S.C. § 7 for proceedings before domestic arbitration panels. Such an inconsistency not only would be devoid of principle,[8] but also would create an entirely new category of disputes concerning the appointment of arbitrators and the characterization of arbitral panels as domestic, foreign, or international.[9] As noted above, therefore, it is our view that Congress intended not this broad result, but rather only the limited expansion described in the House and Senate reports.

In sum, policy considerations of some magnitude reinforce our conclusion, based upon an analysis of the text and legislative history of § 1782, that Congress did not intend for that statute to apply to an arbitral body established by private parties.

### III. Conclusion

The order of the district court quashing—and denying the motion to enforce—the subpoenas served on the Third Parties is affirmed.

### APPENDIX A

The repealed sections 270–270g are set forth below:

> § 270 International tribunals; administration of oaths; perjury.

8. We acknowledge that because § 1782 does not apply to proceedings before private arbitrators, those who do not sit within the United States may face some difficulty in compelling evidence located here. *See* 9 U.S.C. § 7 (providing for compulsion of evidence by district court in district where arbitrators are sitting). Nevertheless, we consider this inconsistency to be less significant than that which would obtain from the contrary result.

9. For example, Professor Smit's most recent interpretation of the statute would have "tribunal" under § 1782 refer to "all bodies with adjudicatory functions." Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals*, 25 Syracuse J. Int'l L. & Com. 1, 5 (1998). A tribunal would be international "when

any of the parties before it, or any of the arbitrators, is not a citizen or resident of the United States"; and a tribunal would be foreign "when it is held anywhere outside the United States or is created under the law of a foreign country." *Id.* at 7–8. This understanding of the term "foreign or international tribunal" contains no discernible limits and could theoretically encompass even the most informal, unorthodox private dispute resolution proceedings. Further, it would produce anomalous results. For example, if the parties in a domestic arbitration simply appointed one foreign arbitrator to an otherwise entirely domestic panel dealing with a purely domestic dispute, that appointment would make § 1782 available to the parties where it otherwise would not be.

Whenever any claim in which the United States or any of its nationals is interested is pending before an international tribunal or commission, established pursuant to an agreement between the United States and any foreign government or governments, each member of such tribunal or commission, or the clerk or a secretary thereof, shall have authority to administer oaths in all proceedings before the tribunal or commission; and every person knowingly and willfully swearing or affirming falsely in any such proceedings, whether held within or outside the United States, its territories or possessions, shall be deemed guilty of perjury and shall, upon conviction, suffer the punishment provided by the laws of the United States for that offense, when committed in its courts of justice.

§ 270a  Same;  testimony of witnesses; documentary evidence; subpoenas.

Any such international tribunal or commission shall have power to require by subpoena the attendance and the testimony of witnesses and the production of documentary evidence relating to any matter pending before it.  Any member of the tribunal or commission may sign subpoenas.

§ 270b  Same; contempts.

Any failure to attend as a witness or to testify as a witness or to produce documentary evidence in an appropriate case may be regarded as a contempt of the authority of the tribunal or commission and shall be punishable in any court of the United States in the same manner as is provided by the laws of the United States for that offense when committed in its courts of justice.

§ 270c  Same; commissioners to take evidence; procedure.

To afford such international tribunal or commission needed facilities for the disposition of cases pending therein said tribunal or commission is authorized and empowered to appoint competent persons, to be named as commissioners, who shall attend the taking of or take evidence in cases that may be assigned to them severally by the tribunal or commission and make report of the findings in the case to the tribunal or commission.  Any such commissioner shall proceed under such rules and regulations as may be promulgated by the tribunal or commission and such orders as the tribunal or commission may make in the particular case and may have and perform the general duties that pertain to special masters in suits in equity. He may fix the times for hearings, administer oaths, examine witnesses, and receive evidence.  Either party to the proceeding before the tribunal or commission may appear before the commissioner by attorney, produce evidence, and examine witnesses.  Subpoenas for witnesses or for the production of testimony before the commissioner may issue out of the tribunal or commission by the clerk thereof and shall be served by a United States marshal in any judicial district in which they are directed. Subpoenas issued by such tribunal or commission requiring the attendance of witnesses in order to be examined before any person commissioned to take testimony therein shall have the same force as if issued from a district court and compliance therewith shall be compelled under such rules and orders as the tribunal or commission shall establish.  Any person appointed as commissioner may be removed at the pleasure of the tribunal or commission by which he is appointed.

§ 270d  Same;  subpoenas;  applications by agent to United States district court. The agent of the United States before any international tribunal or commission, whether previously or hereafter established, in which the United States participates as a party whenever he desires to obtain testimony or the production of books and papers by witnesses may apply to the United States district court for the district in which such witness or witnesses reside or may be found, for the issuance of subpoenas to require their attendance and testimony before the United States district court for that district and the production

therein of books and papers, relating to any matter or claim in which the United States on its own behalf or on behalf of any of its nationals is concerned as a party claimant or respondent before such international tribunal or commission.

§ 270e  Same; issuance of subpoenas by United States district court; proceedings thereon; notice to foreign governments; filing transcripts of testimony with agent of United States.

Any United States district court to which such application shall be made shall have authority to issue or cause to be issued such subpoenas upon the same terms as are applicable to the issuance of subpoenas in suits pending in the United States district court, and the clerk thereof shall have authority to administer oaths respecting testimony given therein, and the marshal thereof shall serve such subpoenas upon the person or persons to whom they are directed. The hearing of witnesses and taking of their testimony and the production of books and papers pursuant to such subpoenas shall be before the United States district court for that district or before a commissioner or referee appointed by it for the taking of such testimony, and the examination may be oral or upon written interrogatories and may be conducted by the agent of the United States or his representative.  Reasonable notice thereof shall be given to the agent or agents of the opposing government or governments concerned in such proceedings who shall have the right to be present in person or by representative and to examine or cross-examine such witness at such hearing.  A certified transcript of such testimony and any proceedings arising out of the issuance of such subpoenas shall be forwarded by the clerk of the district court to the agent of the United States and also to the agent or agents of the opposing government or governments, without cost.

§ 270f  Same; perjury; contempts; penalties.

Every person knowingly or willfully swearing or affirming falsely in any testimony taken in response to such subpoenas shall be deemed guilty of perjury, and shall, upon conviction thereof, suffer the penalty provided by the laws of the United States for that offense when committed in its courts of justice. Any failure to attend and testify as a witness or to produce any book or paper which is in the possession or control of such witness, pursuant to such subpoena, may be regarded as a contempt of the court and shall be punishable as a contempt by the United States district court in the same manner as is provided by the laws of the United States for that offense in any other proceedings in its courts of justice.

§ 270g  District Court of the United States for the District of Columbia a district court of United States.

22  U.S.C. §§ 270–270g (1958).